# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| BETTY WADE, as REPRESENTATIVE OF THE ESTATE OF DAVID HENEGAR, and DAVID JACOB HENEGAR | Case No.: 3:23-cv-00073-DHB-BKE |
| *Plaintiffs*, | |
| *v.* | Hon. Dudley H. Bowen, Jr., District Judge |
| KEAMBRIAH MORGAN, JESSICA BLOUNT, TAMARA GRIER, LAKISHA FRANKLIN, ELLA MATHIS, TRACEY JOHNSON MCAFEE, SHYRA TAYLOR, VICTOR ROGERS, CHABRA DAVIS-BRAGG, DONALD LANGDON, CHAQUANTA JOHNSON, AERIAL TUCKER, OCTAVIA BRIDGES, LEEANDRA CARR, PAMELA CASON, ASIA CLIETT, STEPHANIE CULLENS, QUENDARRIUS HA'KE DANZY, JOCELYN ELBERT, NEISHA NICOLE FIELDS, SHABREKA GORDON, DANIEL GREENE, CHASITY HALL, MICHELLE HARDY, , RACHELLE LEMON, ADA MESSER, KIERRA MORRIS, DEWANDA NORRIS, TRAVIS PROSSER, KIMBERLY ROGERS, JYLECCA ROWLAND, TIFFANY SAILEM, ERICA SCOTT, MICHAEL STAFFORD, GALE STRICKLAND, BETTY THOMAS, ANTOINE CALDWELL, EDGINALD GIBBONS, TIMOTHY WARD, Defendant Unknown Mental Health Supervisors, and Other Unknown Correctional Officers, | Hon. Brian K. Epps, Magistrate Judge<br><br>**JURY TRIAL DEMANDED** |
| *Defendants*. | |

1

## THIRD AMENDED COMPLAINT[1]

Plaintiffs Betty Wade, as representative of the Estate of David Henegar, and David Jacob Henegar, by their attorneys with the law firm Loevy & Loevy, file this complaint against Defendants Keambriah Morgan, Jessica Blount, Tamara Grier, Lakisha Franklin, Ella Mathis, Tracy Johnson McAfee, Shyra Taylor, Victor Rogers, Chabra Davis-Bragg, Donald Langdon, Chaquanta Johnson, Aerial Tucker, Octavia Bridges, Leeandra Carr, Pamela Cason, Asia Cliett, Stephanie Cullens, Quendarrius Ha'ke Danzy, Jocelyn Elbert, Neisha Nicole Fields, Shabreka Gordon, Daniel Greene, Chasity Hall, Michelle Hardy, Rachelle Lemon, Ada Messer, Kierra Morris, Dewanda Norris, Travis Prosser, Kimberly Rogers, Jylecca Rowland, Tiffany Sailem, Erica Scott, Michael Stafford, Gale Strickland, Betty Thomas, Iyoka Walker, Kochelle Watson, Le'Tia S. Webb, Keirra Wilcher, Joyce Womble, Helen Wright, Antoine Caldwell, Edginald Gibbons, Timothy Ward, and other unknown correctional officers, and state as follows:

### INTRODUCTION

1.      Over the course of hours on October 16, 2021, at Johnson State Prison in Wrightsville, Georgia, David Henegar was violently choked and beaten to death by his cellmate, Antone Hinton-Leonard.

2.      This murder was tragically preventable.

3.      Defendant prison officials were within earshot during the lengthy attack on Mr. Henegar and could hear Mr. Henegar screaming, but did nothing to intervene.

4.      During the attack, prison officials saw Mr. Henegar on the floor of his cell, distressed and violently beaten, and did nothing to help.

---

[1] Plaintiff has conferred with counsel for Defendants, and they have consented to the filing of this amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

5.     Fellow prisoners at Johnson State Prison yelled for help over the many hours the attack lasted, but prison officials did nothing to intervene.

6.     Defendants knew that Hinton-Leonard had beaten Mr. Henegar a week prior to his fatal assault, yet they did nothing to separate the two or otherwise protect Mr. Henegar.

7.     What's more, for weeks leading up to Mr. Henegar's death, Defendants Morgan, Blount, Grier, Franklin, Gibbons, and Mental Health Supervisors were aware that Mr. Hinton-Leonard's mental health was unstable and he was dangerous. Mr. Henegar had raised the alarm about his roommate's mental health to prison officials, and repeatedly asked correctional officers to move him to a different cell. Defendants ignored his requests.

8.     Tragically, Defendants' deliberate indifference to Hinton-Leonard's first attack on Mr. Henegar, decompensating mental state, and obvious dangerousness led straight to Mr. Henegar's death.

9.     Unfortunately Mr. Henegar's death was but one of a series of preventable homicides in Georgia prisons in recent years.

10.    Plaintiffs Betty Wade and David Jacob Henegar bring this complaint to redress the horrific death of their family member, David Henegar.

**Jurisdiction and Venue**

11.    This action is brought pursuant to 42 U.S.C. § 1983 to remedy the Defendants' deprivation of Plaintiff's rights secured by the U.S. Constitution.

12.    This action is also brought pursuant to O.C.G.A. § 51-4-2 to redress Plaintiff's wrongful death and Plaintiff's Estate claims for funeral and burial expenses.

13.    This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state law claim pursuant to 28 U.S.C. § 1367.

14.   Venue is proper under 28 U.S.C. § 1391(b), as the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## Parties

*Plaintiff*

15.   Mr. Henegar was a prisoner at Johnson State Prison and was 44 years old when he was brutally choked and beaten to death by his cellmate.

16.   Betty Wade was David Henegar's sister and is the Personal Representative of Mr. Henegar's Estate.

17.   David Jacob Henegar was Mr. David Henegar's son.


*Defendants*

18.   Plaintiffs sue each of the Defendants listed below in their individual capacities.

19.   Each of the Defendants listed below acted under color of law and within the scope of his or her employment when engaged in the misconduct described herein.

20.   Each of the Defendants listed below is above the age of majority.

21.   Defendant Victor Rogers was a correctional officer assigned to patrol the J Block on October 16, 2021, and the weeks leading up to Mr. Henegar's murder.

22.   Defendant Donald Langdon was a correctional officer who patrolled the J Block on October 16, 2021, and the weeks leading up to Mr. Henegar's murder.

23.   Defendant Tracy Johnson McAfee was a correctional officer stationed on duty in the J Block on October 16, 2021, and the weeks leading up to Mr. Henegar's murder.

24.   Defendant Jessica Blount was a correctional officer at Johnson State Prison at all times relevant to this lawsuit.

4

25.    Defendant Keambriah Morgan was a correctional officer at Johnson State Prison at all times relevant to this lawsuit.

26.    Defendant Ella Mathis was a sergeant at Johnson State Prison at all times relevant to this lawsuit, and was the assigned shift supervisor on October 16, 2021.

27.    Defendant Shyra Taylor was a lieutenant at Johnson State Prison at all times relevant to this lawsuit. She was responsible for the safety of the prisoners at Johnson State Prison, for monitoring and supervising the prisoners, as well as for subordinate staff.

28.    Defendant Tamara Grier was a Unit Manager at Johnson State Prison at all times relevant to this lawsuit.

29.    Defendant Chabra Davis-Bragg was Mr. Henegar's counselor at Johnson State Prison at all times relevant to this lawsuit.

30.    Defendants Octavia Bridges, Leeandra Carr, Pamela Cason, Asia Cliett, Stephanie Cullens, Quendarrius Ha'ke Danzy, Jocely Elbert, Neisha Nicole Fields, Shabreka Gordon, Daniel Greene, Chasity Hall, Michelle Hardy, Chaquanta Johnson, Rachelle Lemon, Ada Messer, Kierra Morris, Dewanda Norris, Travis Prosser, Kimberly Rogers, Jylecca Rowland, Tiffany Sailem, Erica Scott, Michael Stafford, Gale Strickland, Betty Thomas, Aerial Tucker, Iyoka Walker, Kochelle Watson, Le'Tia S. Webb, Keirra Wilcher, Joyce Womble, and Helen Wright were responsible for inmate classification and housing, including for Mr. Henegar and Hinton-Leonard, at all times relevant to this lawsuit. They are collectively referred to as "Classification Defendants."

31.    At all times relevant to this lawsuit, Defendant Unknown Mental Health Supervisors were supervisors in the mental health unit at Johnson State Prison.

32. Defendant Lakisha Franklin was the Deputy Warden of Care and Treatment at Johnson State Prison at all times relevant to this lawsuit.

33. Defendant Antoine Caldwell was the Warden at Johnson State Prison at all times relevant to this lawsuit.

34. Defendant Edginald Gibbons was Deputy Warden of Security at Johnson State Prison at all times relevant to this lawsuit.

35. Defendant Timothy Ward was the Commissioner of Georgia Department of Corrections at all times relevant to this lawsuit.

36. Collectively, Defendants Ward, Caldwell, and Gibbons are referred to as the "Defendant Supervisors."

**Defendants Failed to Protect Mr. Henegar from a
Known and Substantial Risk of Serious Harm**

***Hinton-Leonard Exhibits Obvious Signs of Being Extremely Dangerous***

37. From the time Hinton-Leonard was assigned as Mr. Henegar's cellmate in August 2021, Mr. Henegar expressed concern about the mental health of his cellmate.

38. Early on after Hinton-Leonard first arrived in the shared cell, Mr. Henegar expressed concern about his cellmate's hygiene.

39. Hinton-Leonard went weeks without showering or changing his clothes, and smelled foul.

40. He ate his meals with his hands.

41. Hinton-Leonard also had obvious psychotic episodes. For instance, he regularly had conversations with himself.

42. At times he remained awake all night, ranting about various subjects and frightening Mr. Henegar.

6

43. For weeks Mr. Henegar was notifying prison officials, including but not limited to Defendant Blount, Defendant Davis-Bragg, and Defendant Mental Health Supervisors, that Hinton-Leonard was in mental distress and dangerous.

44. In addition to these complaints, Hinton-Leonard's mental condition was serious and obvious to everyone who encountered him, including Defendants Davis-Bragg, Blount, Morgan, Grier, McAfee, Rogers, Mathis, and Taylor.

45. For instance, in September 2021, Defendant Blount witnessed one of Hinton-Leonard's disturbing episodes.

46. Based on Hinton-Leonard's behavior, Mr. Henegar again tried to get himself or Hinton-Leonard reassigned to a different cell. This time, he asked Defendant Blount directly.

47. Defendant Blount ignored Mr. Henegar's request.

48. In September 2021, Mr. Henegar sent a letter to prison officials, including Defendant Mental Health Supervisors and Defendants Franklin and Gibbons. In it, he stated that Hinton-Leonard was not receiving his medicine and was a danger to both Mr. Henegar and himself.

49. Classification Defendants were also aware that Hinton-Leonard was experiencing mental distress and was dangerous.

50. Defendants Davis-Bragg, Caldwell, Blount, Morgan, Grier, McAfee, Rogers, and Mathis, Taylor, Franklin, Gibbons, and Classification Defendants took no steps to secure Mr. Henegar's safety or separate the cellmates in response to Mr. Henegar's complaints, despite their knowledge of the danger Hinton-Leonard posed, or their own direct observations of Hinton-Leonard's dangerousness.

***Hinton-Leonard Chokes Mr. Henegar Nearly to Death and Mr. Henegar Reports the Incident***

51.   On or around October 9, 2021, a mere week before Hinton-Leonard murdered Mr. Henegar, Hinton-Leonard choked Mr. Henegar in their shared cell until Mr. Henegar lost consciousness.

52.   Mr. Henegar reported this assault to Defendant Grier and requested that either he or Hinton-Leonard be moved because of the danger his cellmate posed.

53.   As a Unit Manager, Defendant Grier was responsible for prisoner custody and movement.

54.   Defendant Grier ignored Mr. Henegar's request.

55.   Classification Defendants were responsible for keeping track of inmate classification and housing, and monitoring/staying informed about inmates who posed risks to other inmates' safety, including Mr. Henegar and Hinton-Leonard.

56.   Classification Defendants were responsible for ensuring inmates like Mr. Henegar were not housed with other inmates who posed serious risks to their safety, like Hinton-Leonard.

57.   Classification Defendants did not take any steps to separate Hinton-Leonard and Mr. Henegar so they were not housed together.

58.   In addition, on or around October 11, 2021, Mr. Henegar told Defendant Morgan and two male officers that he wanted to move to a different cell because his cellmate was dangerous.

59.   Rather than do anything to separate the cellmates, the two male officers encouraged Mr. Henegar to hit Hinton-Leonard, but Mr. Henegar refused.

60.   Defendant Morgan also told Mr. Henegar she would move him, but she never did.

61.   Upon information and belief, Mr. Henegar also told his counselor, Defendant Davis-Bragg, that he needed to be separated from his cellmate for safety purposes.

62.     Classification Defendants were also aware that Hinton-Leonard attacked Mr. Henegar in their shared cell.

63.     Despite knowing that Hinton-Leonard had attacked Mr. Henegar in their cell, Defendants Davis-Bragg, Grier, Morgan, Blount, and Classification Defendants took no steps to keep Mr. Henegar free from future harm at Hinton-Leonard's hands.

64.     As but one example, once Defendants Grier, Morgan, and Blount became aware of the serious danger Hinton-Leonard posed, they should have at a minimum regularly searched the cell for weapons. Had they done so, they would have discovered that Hinton-Leonard had a leather belt—contraband at Johnson State Prison because it can be used as a weapon—and confiscated it.

65.     Johnson State Prison had policies and procedures in place to keep Mr. Henegar free from harm from cellmates like Hinton-Leonard, including reclassifying and segregating prisoners like Hinton-Leonard if they exhibited adverse behavior.

66.     Yet, Defendants like Davis-Bragg, Langdon, Classification Defendants, Grier, Gibbons, and Caldwell, who were responsible for keeping track of inmate safety issues with respect to their cellmates, and who had responsibility for inmate movement and classification, including that of Mr. Henegar and Hinton-Leonard, took no steps to enforce these policies and/or otherwise protect Mr. Henegar from the danger presented by Hinton-Leonard.

67.     Additionally, given the clear danger Hinton-Leonard presented, Johnson State Prison officials should have conducted more cell checks of the cell Hinton-Leonard and Mr. Henegar shared to ensure Mr. Henegar's safety.

68.     Alternatively, once Plaintiff expressed his fear of Hinton-Leonard to various Defendants, Defendants should have transferred Hinton-Leonard to an area in which he received more cell checks.

***As Expected, Hinton-Leonard Attacked Mr. Henegar Again, Leading to His Tragic Death***

69.     Hinton-Leonard's assault on Mr. Henegar began in the early hours of October 16, 2021, in a locked cell in the J Dorm of Johnson State Prison.

70.     Hinton-Leonard used a piece of cloth to bind Mr. Henegar's hands behind his back, and bound Mr. Henegar's feet together with a leather belt.

71.     Over the next hours, Hinton-Leonard brutally beat and choked Mr. Henegar.

72.     During the attack, Hinton-Leonard stomped on Mr. Henegar's chest and strangled him. Hinton-Leonard broke Mr. Henegar's neck and multiple ribs, caused acute damage to his organs, and fractured his sternum. Hinton-Leonard caused internal bleeding and a brain hemorrhage.

73.     Neighboring prisoners could hear screams coming from Mr. Henegar's cell for at least an hour during the attack.

74.     Fellow prisoners in the J Dorm and Mr. Henegar repeatedly called out to guards for help.

75.     However, no officer intervened to stop the attack.

76.     Defendants Rogers and Langdon were the officers on duty in the J Dorm while Mr. Henegar was murdered. They were responsible for patrolling the J Dorm and responding to inmate-on-inmate violence.

77.     Defendant Mathis was the shift supervisor assigned to J Dorm during the night of the attack and in the weeks leading up to it. As shift supervisor, she was responsible for ensuring that staff were where they were supposed to be and were carrying out their duties, ensuring that

contraband searches were conducted, and responding to inmate-on-inmate violence, among other responsibilities.

78.    Defendants Rogers and Langdon were within earshot and eyeshot of Mr. Henegar's cell during the fatal attack.

79.    On information and belief, Defendant Mathis also overheard Mr. Henegar's and other inmates' screams for help.

80.    In addition, Defendant McAfee and other correctional officers in the J Dorm heard Mr. Henegar and other prisoners yelling for help, but did nothing.

81.    Around 2:30 a.m. and 5:00 a.m. while Defendant Langon was doing rounds, Defendant Langdon looked into Mr. Henegar's cell and observed the attack and heard Mr. Henegar begging for his life.

82.    During at least one of those rounds, Mr. Henegar asked Defendant Langon to get out of the cell, and Defendant Langdon told Mr. Henegar to "just deal with it," or words to that effect.

83.    Around 6:50 a.m., Defendant Rogers saw Mr. Henegar on the ground, beaten and covered in bruises, but still moving.

84.    Defendant Rogers and the other officers on shift provided no assistance to Mr. Henegar at that time.

85.    The beating continued for hours, but eventually, just before 9:15 a.m., Mr. Henegar's screams stopped.

86.    At or around 9:15 a.m., Defendant McAfee discovered Mr. Henegar dead in his locked cell.

87.    Mr. Henegar was found with his arms tied behind his back with a piece of white cloth, and his legs tied with a brown leather belt.

88.    Mr. Henegar was warm to the touch when the coroner arrived, meaning that had died very recently.

89.    The coroner determined that Mr. Henegar died of manual strangulation and blunt force injuries.

90.    During the hours-long attack, Defendants Rogers, Mathis, and McAfee, had ample opportunity to intervene and stop the attack and/or move Mr. Henegar to safety but never did.

91.    Indeed, had any Defendant intervened while the Hinton-Leonard was beating Mr. Henegar, or after observing Mr. Henegar lying on the ground, Mr. Henegar would have survived.

*An Escalating Culture of Violence in Georgia Prisons*

92.    Prior to the fatal attack on Mr. Henegar on October 16, 2021, Defendants Caldwell, Gibbons, and Ward of the Georgia Department of Corrections were on notice of an increased culture of violence in Georgia prisons in which inmate violence was endemic; mentally ill or dangerous inmates were improperly classified and not segregated; and inmates lived in fear of their lives.

93.    As the Warden at Johnson State Prison, Defendant Caldwell was responsible for the day-to-day operations of the prison, the safety and security of all prisoners at Johnson State Prison, and the supervision of all subordinate employees.

12

94.    As the Deputy Warden of Security at Johnson State Prison, Defendant Gibbons was responsible for maintaining the safety and security of all prisoners at Johnson State Prison and supervising security staff members, as well as overseeing the rotation of security posts.

95.    As the Commissioner of Georgia Department of Corrections, Defendant Ward was the highest-ranking official in the Georgia Department of Corrections and was responsible for the direction, supervision, and control of the Department of Corrections.

96.    Between 2020 and 2022, Mr. Henegar was 1 of at least 57 inmates murdered in Georgia Department of Corrections.

97.    That is nearly triple the number of inmates who died by homicide in Georgia Department of Corrections prisons between 2018 and 2019.

98.    Should this rate persist, Georgia's prison homicide rate will reach 63 homicides per 100,000 inmates—eight times the national rate.

99.    Georgia currently has the third highest prison death rate from unnatural causes of all 50 states.

100.    In November 2020, roughly a year before Mr. Henegar's murder, a prisoner at Johnson State Prison was killed in similar circumstances, as he was assaulted to death by another inmate.

101.    In September 2021, in response to the increasing rate of inmate-on-inmate homicides in GDC, the United States Department of Justice took the highly unusual step of launching a public investigation into the increased violence at GDC.

102.    The Department of Justice publicly announced that the investigation would "examine whether Georgia provides prisoners reasonable protection from physical harm at the

13

hands of other prisoners." The investigation has focused on the increased violence among inmates and its cause.

103. Additionally, in the time leading up to Mr. Henegar's death, contraband weapons proliferated at Georgia prisons.

104. In July 2022, correctional officers in five Georgia prisons seized thousands of contraband items during a series of unannounced shakedowns. The Georgia Department of Corrections announced that they had seized roughly 650 contraband weapons during the search.

105. Defendant Supervisors were aware of the increased violence in Georgia prisons, but took no steps to address it.

106. For instance, GDC enacted policies by which correctional staff needed to report threats of serious harm from mentally unstable inmates, and take steps to reclassify those dangerous inmates so they would not be housed with cellmates.

107. Defendant Supervisors knew that these policies were not being followed, but did nothing to address this problem.

### *A Staffing Crisis at Georgia Prisons*

108. The Assistant Attorney General for Civil Rights at the United States Department of Justice, Kristen Clarke, identified Georgia prisons' extreme staffing shortage as one of the factors causing insufficient supervision and increased violence.

109. With fewer guards, it becomes exponentially more difficult for prison officials to supervise prisoners, prevent violence from breaking out, and ensure prisoners' timely access to medical care.

110. As of August 2021, Georgia prisons were understaffed by as much as 75%.

111.    Between 2010 and 2021, the GDC prisoner population declined by 5%, while GDC prison staff declined by 35%.

112.    At a September 2021 state congressional hearing, a guard testified that on a good day, there were 6-7 officers to supervise 1,200 prisoners at Lee Arrendale State Prison. That breaks down to one guard for every 200 prisoners.

113.    By comparison, the Federal Bureau of Prisons recommends a baseline staffing ratio of one guard for every 15 prisoners.

114.    The guard also testified that prison officials "lack the ability to get [prisoners] to our medical facility due to the fact that we lack the number of officers to get them up there and also because we don't have enough medical staff to be able to treat all of them."

115.    Defendant Commissioner Ward was aware of the staffing shortages in Georgia prisons prior to, and immediately leading up to, Mr. Henegar's death in October 2021.

116.    In September 2021, the watchdog organization "They Have No Voice" wrote an open letter to Defendant Ward, detailing the security issues in Georgia prisons caused by understaffing and requesting that the Georgia National Guard be deployed to Georgia's prisons. Ward did not respond.

117.    At a Georgia Department of Corrections budget hearing in January 2022, Defendant Ward testified that Georgia Department of Corrections was facing a 49% turnover rate among its staff, but did not propose a solution to the staffing shortage or request assistance to identify a solution.

118.    Defendant Ward was aware of the staffing issues and resulting security crisis at Georgia prisons in the years prior to Mr. Henegar's murder, but did not take any steps to address these issues.

119.    Defendant Ward's failure to act placed prisoners like Mr. Henegar at substantial risk of serious harm and ultimately led to his death.

120.    Prior to being incarcerated, Mr. Henegar was a trained welder and mechanic who had been consistently employed as a welder, truck mechanic, and machinist. While incarcerated, Mr. Henegar shared his skills with others and taught friends how to weld. Had Mr. Henegar survived, he would have sought continued employment as a welder and mechanic.

121.    But for Johnson State Prison officials' inaction relating to Mr. Henegar and Hinton-Leonard, Mr. Henegar would still be alive.

122.    Ms. Wade and David Jacob Henegar timely sent an ante litem notice on September 30, 2022, via certified mail. The notice and proofs of delivery are attached hereto as Exhibit A.

### *The Aftermath*

123.    Mr. Hinton-Leonard has been charged with murder for causing Mr. Henegar's death.

124.    Mr. Hinton-Leonard's criminal case is pending; he has not yet been arraigned.

### Count I
### 42 U.S.C. § 1983—Eighth Amendment—Failure to Protect
### Against Defendants Morgan, Grier, Davis-Bragg, Classification Defendants, Blount, Gibbons, Caldwell, Rogers, McAfee, Mathis, Langdon, and Franklin

125.    Plaintiff incorporates by reference and as if fully restated here paragraphs 36-91 of this Complaint.

126.    Pursuant to the Eighth Amendment of the United States Constitution, a prison official who is aware of a substantial risk of serious harm to a prisoner must respond reasonably to that risk.

127.    Doing nothing in the face of a serious risk of harm to an inmate is not a reasonable response.

128.    Defendants Morgan, Grier, Davis-Bragg, Blount, Gibbons, Franklin, Rogers, Mathis, Taylor, Langdon, Caldwell, and Classification Defendants were aware that Hinton-Leonard posed a serious risk of harm to Mr. Henegar. Specifically:

129.    Defendants Morgan, Grier, Davis-Bragg, Blount, Gibbons, Franklin, Rogers, Mathis, Taylor, Langdon, and other officers were informed by Mr. Henegar himself in the weeks leading up to his death that Hinton-Leonard posed a serious danger of physical violence.

130.    Defendants Grier, Davis-Bragg, Blount, Franklin, Rogers, Mathis, Taylor, Langdon, and other officers had also received multiple requests from Mr. Henegar to be moved to a different cell, away from Hinton-Leonard, because Hinton-Leonard posed a serious and known danger to Mr. Henegar.

131.    Because they were responsible for Mr. Henegar's and Hinton-Leonard's classification and housing, Classification Defendants were made aware that Hinton-Leonard posed a serious and known danger to Mr. Henegar.

132.    For weeks leading up to Mr. Henegar's death, these Defendants were aware that Hinton-Leonard was mentally unstable, dangerous, and posed a serious risk of harm to Mr. Henegar.

133.    Defendants Grier, Classification Defendants, and others identified *supra* were aware that a week before the murder, Hinton-Leonard choked Mr. Henegar until Mr. Henegar lost consciousness.

134.    Defendants Rogers, Mathis, McAfee, Langdon, and Taylor learned that Hinton-Leonard was mercilessly attacking Mr. Henegar on October 16, and in doing so posed a serious

17

risk to Mr. Henegar. At no point during the attack did any of these Defendants take any reasonable step to address that risk.

135.   These Defendants' failure to separate Hinton-Leonard and Mr. Henegar or otherwise take any reasonable step to address the risk Hinton-Leonard posed, including conduct more frequent cell checks, despite their knowledge of that risk, was undertaken with deliberate indifference, malice, willfulness, and/or reckless indifference to the Mr. Henegar's rights, and was objectively unreasonable.

136.   These Defendants' failure to take any reasonable steps to protect Mr. Henegar directly and proximately caused Mr. Henegar to suffer horrific physical and emotional injuries, pain, suffering, and death.

### Count II
### 42 U.S.C. § 1983—Eighth Amendment—Failure to Intervene
### Against Defendants Rogers, Mathis, McAfee, Langdon, and Taylor

137.   Plaintiff incorporates by reference and as if fully restated here paragraphs 68-91 of this Complaint.

138.   Pursuant to the Eighth Amendment of the United States Constitution, a prison official who is aware of an ongoing serious harm to a prisoner must take reasonable steps to intervene.

139.   Doing nothing in the face of ongoing serious harm to an inmate is not a reasonable intervention.

140.   Defendant Rogers, Mathis, Langdon, and McAfee were aware that Mr. Henegar was being brutally attacked, because they could hear Mr. Henegar and other inmates screaming for help.

18

141.    Defendant Mathis, McAfee, Langdon, and Taylor were aware of Mr. Henegar's serious medical need because they could hear Mr. Henegar screaming in pain while he was slowly beaten to death.

142.    In addition, Defendants Rogers and Langdon saw Mr. Henegar on the ground in his locked cell, beaten and in obvious physical distress, but alive.

143.    Defendant Rogers, Mathis, Langdon, and McAfee were in a position to stop the attack, but took no reasonable steps to do so.

144.    These Defendants' failure to separate Hinton-Leonard and Mr. Henegar or otherwise take any steps to stop the attack, was undertaken with deliberate indifference, malice, willfulness, and/or reckless indifference to the Mr. Henegar's rights, and was objectively unreasonable.

145.    These Defendants' failures to intervene during Mr. Henegar's hours-long murder directly and proximately caused Mr. Henegar to suffer horrific physical and emotional injuries, pain, suffering, and death.

### Count III
### 42 U.S.C. § 1983—Eighth Amendment—Denial of Adequate Medical Care, Against Defendants Rogers, Mathis, McAfee, Langdon, and Taylor

146.    Plaintiff incorporates by reference and as if fully restated here paragraphs 68-91 of this Complaint.

147.    Pursuant to the Eighth Amendment of the United States Constitution, Mr. Henegar was entitled to appropriate medical care while suffering from a serious medical need.

19

148. Defendants Rogers, Mathis, McAfee, Langdon, and Taylor denied Mr. Henegar this right when they became aware of Mr. Henegar's serious medical need as he lay dying on October 16, 2021, yet took no steps to provide or otherwise ensure he received care.

149. Specifically, Defendants Rogers and Langdon were aware that Mr. Henegar was in serious medical distress because he saw him lying on the floor severely beaten but still alive.

150. Defendants Mathis, McAfee, Langdon, and Taylor were aware of Mr. Henegar's serious medical need because they could see and/or hear Mr. Henegar screaming in pain while he was slowly beaten to death.

151. None of these defendants took any steps to provide or procure medical care for Mr. Henegar.

152. Had Defendants provided medical care to Mr. Henegar at any point during his fatal beating, he would have survived. Thus, these Defendants' failures to provide medical care during Mr. Henegar's hours-long murder directly and proximately caused Mr. Henegar to suffer horrific physical and emotional injuries, pain, suffering, and death.

153. These Defendants' failure to provide medical care for Mr. Henegar was undertaken with deliberate indifference, malice, willfulness, and/or reckless indifference to the Mr. Henegar's rights, and was objectively unreasonable.

**Count IV**
**42 U.S.C. § 1983—Fourteenth Amendment—Due Process**
**Against Defendants Rogers, Mathis, McAfee, Langdon, and Taylor**

154. Plaintiff incorporates by reference and as if fully restated here paragraphs 68-91 of this Complaint.

155. The custodial relationship between an inmate and a prison official gives rise to a constitutional duty on the part of the official to protect the inmate.

20

156.    Defendants Rogers, Mathis, McAfee, Langdon, and Taylor violated this duty and therefore violated Mr. Henegar's substantive due process right when they failed to protect him from the known danger Hinton-Leonard presented.

157.    Even as Mr. Henegar could be heard dying and begging for his life, Defendants Rogers, Mathis, McAfee, Langdon, and Taylor refused to step in and save his life.

158.    As discussed in paragraphs 68-91, Defendants' refusal to do a single thing to stop Hinton-Leonard from beating Mr. Henegar to death or provide Mr. Henegar with medical care, despite their awareness of it and ample opportunities to do so, were abhorrent and shocking to the conscience.

**Count V**
**42 U.S.C. § 1983—Eighth Amendment—Failure to Supervise**
**Against Defendants Franklin, Caldwell, Gibbons, and Ward**

159.    Plaintiff incorporates by reference and as if fully restated here paragraphs 92-119 of this Complaint.

160.    Defendant Supervisors are liable for the constitutional deprivations described in Counts I-IV because there is a causal connection between their actions and/or failures to act and those constitutional deprivations.

161.    Defendant Supervisors are liable for the constitutional deprivations described in Counts I-IV because they were aware of the safety crisis in Georgia prisons and needed to take reasonable measures to stem it, but deliberately chose not to.

162.    More specifically, Defendants Franklin, Caldwell, and Gibbons were aware of an escalating culture of violence and a staffing crisis at Johnson State Prison, while Defendant Ward was aware of the increasing violence and staffing issues at Georgia state prisons.

163.    Prior to Mr. Henegar's death, Defendants Franklin, Caldwell, Gibbons, and Ward were aware of the escalating rates of inmate violence and homicides, the proliferation of

21

contraband weapons, and the lack of staff necessary to ensure prisoner safety in Georgia prisons generally and at Johnson State Prison in particular.

164. Even so, Defendants Franklin, Caldwell, Gibbons, and Ward did nothing to address these crises.

165. Defendants Franklin, Caldwell, and Gibbons also failed to enforce policies to ensure that mentally ill or dangerous inmates were properly classified and segregated, or that inmates who were attacked by other inmates would not be forced to share a cell with their assailants following an attack.

166. Defendants Franklin, Caldwell, and Gibbons also failed to enforce policies by which prison officials would investigate and discipline acts of violence, which emboldened violent prisoners and encouraged a culture of violence in Georgia prisons.

167. Defendants Franklin, Caldwell, and Gibbons failed to take reasonable measures to protect prisoners from known threats to their safety by failing to identify and separate prisoners with a known history of violence toward specific people from those people, failing to adequately respond to prisoners who raised concerns about their safety, and/or failing to train and discipline subordinates whose known misconduct contributed to these policies and practices.

168. Additionally, Defendant Ward failed to take reasonable measures to stem the tide of increasing violence in Georgia state prisons to prevent inmate homicides, including but not limited to addressing the staffing shortage.

169. Defendants Franklin, Caldwell, Gibbons, and Ward therefore had both actual and constructive notice of the widespread violence inside Johnson State Prison and endemic to prisons across the state in the time period leading up to Mr. Henegar's murder.

22

170. The misconduct described in this cause of action was undertaken with deliberate indifference, malice, willfulness, and/or reckless indifference to the rights of prisoners such as Mr. Henegar, and was objectively unreasonable.

171. These Defendants' misconduct directly and proximately caused Mr. Henegar to be subjected to a substantial risk of serious harm and to suffer horrific physical and emotional injuries, pain, suffering, and death.

172. Additionally, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Johnson State Prison and the Georgia Department of Corrections writ large, which occurred with the consent of Defendants Franklin, Caldwell, Gibbons, and Ward, who personally knew about, facilitated, approved, and/or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by their actions or by their deliberate indifference and failed to act.

### Count VI
### State Law—Negligence
### Against Defendants Morgan, Grier, Davis-Bragg, Classification Defendants, Blount, Gibbons, Rogers, McAfee, Franklin, Mathis, and Ward

173. Plaintiff incorporates by reference and as if fully restated here paragraphs 36-122 of this Complaint.

174. Plaintiff was in the custody and care of Defendants.

175. Defendants had a duty of care to Mr. Henegar, including to safely house him, to protect him from harm by other prisoners, and to ensure the provision of adequate medical care to inmates who have serious medical needs.

176. Defendants Grier, Morgan, Blount, Franklin, Davis-Bragg, Classification Defendants, Gibbons, McAfee, Rogers, Mathis, and Taylor breached this duty when they took no steps to separate Hinton-Leonard and Mr. Henegar so they no longer lived together, despite Mr.

23

Henegar's repeated pleas to be moved to a separate cell and even after Hinton-Leonard choked Mr. Henegar to the point of unconsciousness.

177. Defendants Grier, Morgan, Blount, Franklin, Gibbons, McAfee, Rogers, Mathis, and Taylor also breached this duty when they failed to conduct more frequent cell checks to ensure Plaintiff's safety.

178. These Defendants' breach of duty was a direct and proximate cause of Mr. Henegar's death.

179. Defendants Rogers, Mathis, McAfee, and Taylor breached this duty when they heard Mr. Henegar's screams for help in the hours before his death but failed to take any reasonable steps to stop the assault.

180. In addition, Defendant Rogers breached this duty when he witnessed Mr. Henegar on the floor near his cell door in the hours before death, but failed to take any reasonable steps to check on him or tend to his safety.

181. Defendants Rogers, Mathis, Taylor, and McAfee's failures to separate Hinton-Leonard from Mr. Henegar, and failures to intervene during the hours-long assault were direct and proximate causes of Mr. Henegar's death.

182. Supervisor Defendants breached this duty when they failed to take any steps to address the staffing, inmate-on-inmate violence, and contraband problems at Johnson State Prison.

183. Supervisor Defendants' breach of duty was a direct and proximate cause of Mr. Henegar's death.

184. Mr. Henegar's death was a foreseeable result of each of these failures discussed.

24

**Count VII**
**O.C.G.A. § 51-4-2—State Law—Wrongful Act or Omission Resulting in Death**
**Against Defendants Morgan, Grier, Blount, Gibbons, Davis-Bragg, Classification**
**Defendants, Rogers, McAfee, Franklin, Mathis, and Ward**

185.    Plaintiff incorporates by reference and as if fully restated here paragraphs 36-122 of this Complaint.

186.    A surviving child may recover the full value of the life of a parent, where that parent dies by homicide and where there is no surviving spouse.

187.    Homicide is defined under the statute as "the death of a human being result[ing] from a crime, from criminal or other negligence."

188.    Mr. Henegar does not have a surviving spouse.

189.    Mr. Henegar's son, David Jacob Henegar, brings this claim under Georgia's Wrongful Death Act.

190.    Mr. Henegar died by homicide due to the negligence of Morgan, Grier, Davis-Bragg, Classification Defendants, Blount, Gibbons, Rogers, McAfee, Franklin, Mathis, and Ward as described in Count VI.

191.    Mr. Henegar was a trained welder and mechanic who had been consistently employed in trade positions, including as a welder, truck mechanic, and machinist.

192.    His life had value and, given his skillset, he had high earning potential.

193.    David Jacob Henegar seeks to recover for the full tangible and intangible value of his father's life. David Jacob Henegar claims damages for the wrongful death of his father, and for the loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, as well as for the mental anguish caused by this loss, as well as for funeral and other expenses and damages in accord with the Georgia Wrongful Death Act.

WHEREFORE, Plaintiffs Betty Wade, as representative of the Estate of David Henegar, and David Jacob Henegar, respectfully request that this Court enter a judgment in Plaintiffs' favor and against all Defendants, awarding compensatory damages, punitive damages, and attorneys' fees and costs against each Defendant, jointly and severally, as well as funeral, burial, and probate expenses, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:

/s/ Rachel Brady
Rachel Brady
*Admitted pro hac vice*
Illinois Bar No. 6312402
*Attorney for Plaintiff*

Rachel Brady (Illinois Bar No. 6312402)
*Admitted pro hac vice*
Annie Prossnitz (Illinois Bar No. 6878979)
*Admitted pro hac vice*
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
312-243-5900
brady@loevy.com
prossnitz@loevy.com

Gerald Weber
Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, GA 31107
(404) 522-0507
wgerryweber@gmail.com

26

## CERTIFICATE OF SERVICE

I, Rachel Brady, an attorney, hereby certify that on February 26, 2024, I filed this document using the Court's CM/ECF electronic filing system.

/s/ Rachel Brady
Rachel Brady
*Admitted pro hac vice*
Illinois Bar No. 6312402
*Attorney for Plaintiff*

27